IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Tonya M. Lawrence                         :

    Plaintiff                         : Case No. 3:14-CV-1606

    v.                                :

Carolyn W. Colvin                         : (Judge Richard P. Conaboy)
Acting Commissioner of
Social Security                           :          **FILED**
                                                    **SCRANTON**
    Defendant                         :

JUN 2 4 2015

**Memorandum**

PER _____
DEPUTY CLERK

## I.   Background

### A.   Procedural background

We consider here Plaintiff Tonya Marie Lawrence's appeal from the final decision of the Social Security Administration ("SSA") denying her dual applications for Social Security Disability Benefits ("DBI") and Supplemental Security Income Benefits ("SSI"). The Administrative Law Judge ("ALJ")who evaluated these claims found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with certain additional limitations (R.17) and that jobs exist in significant numbers in the national economy that Plaintiff can perform (R.24-25). Thus, the ALJ denied Plaintiff's claims and that denial became a final decision of the SSA when it was upheld by the Appeals Council on June 20, 2014. (R.1-5). Plaintiff appealed to this Court in timely fashion by Complaint filed August 15, 2014. (Doc. 1). Plaintiff's Complaint

1

specifies seven alleged errors by the ALJ and asks this Court to reverse the Commissioner's decision and award benefits or, in the alternative, remand this matter for a rehearing to "remedy the errors in the ALJ's final decision."   (R.38-39).

**B.    Testimony Before the ALJ**

Plaintiff was born on June 3, 1973 and was not quite 40 years of age on the date (April 23, 2013) of her hearing before the ALJ. Present at that hearing were ALJ Theodore Burock, Vocational Expert Paul Anderson, Plaintiff, and her Attorney, Cynthia Von Schlichten. Plaintiff testified that she is 5'1" tall and weighed 150 pounds. (R.38-39).  She also testified that she was in the process of obtaining a divorce and that she currently rents an apartment which she is able to afford as a result of child arrearage payments she receives incident to a previous marriage.  (R.39-40).  Plaintiff has a driver's licence and drives "pretty much every day" for five to ten minutes getting back and forth to school.  (R.40-41).  She is studying to be a drug and alcohol abuse counselor since the fall of 2011 and had completed three semesters of course work toward that credential at the time of her hearing.  (R.41).

Plaintiff stated that she became disabled on March 4, 2011 (Doc. 1 at 2; R.42) and that she has not worked at all since that date. (R.42).  She had been receiving Workmen's Compensation payments previous to her alleged onset date and continued receiving them until approximately October of 2012 when she settled the

2

Workmen's Compensation claim. (Id). She had been receiving approximately $600.00 weekly due to a work-related injury involving her back. (Id). Plaintiff's only income at the time of her hearing was the aforementioned child support arrearage payments. (R.43). She also stated that she is anticipating receipt of funding from the Pennsylvania Office of Vocational Rehabilitation to help finance her education but that she has not received any financial support from that agency as of the date of her hearing. (Id). Plaintiff also stated that her counselors at the Office of Vocational Rehabilitation suggested that she get psychological testing with the aim that she "get some accommodations at school because I am having trouble focusing and concentrating." (Id).

Plaintiff also testified regarding back and shoulder pain and chronic pain syndrome. She stated that she has pain in her low back and all her joints. She indicated that her shoulders both bother her and that the left is more troublesome than the right. She stated further that she is right-hand dominant and that, while she has constant pain, some days are better than others. She indicated that wet or cold weather tends to make her pain worse. (R.44-46).

Plaintiff testified that she takes morphine, Neurontin and Tizanidine for her pain and also uses a Fentanyl patch. She is on a low dose of these narcotics and her use of them is closely monitored by her doctor because of her history of cocaine use.

3

(R.46).  She stated that she has not used cocaine in more than four years and that she attends AA meetings twice weekly.  (R.47). Plaintiff testified further that these pain medications do curb her pain but they do not eliminate it.  (Id).  The medications have a side-effect of making her "tired a lot."  (Id).  Plaintiff stated that she took two to three months of physical therapy which neither helped nor hurt her and some injections which did not have much effect on her back pain.  (Id).

Plaintiff also testified that when she awakes in the morning she still feels tired and attributes this to the medications she takes.  (R.48).  She related a history of a series of abdominal hernia surgeries that gave her problems when she walked and bent but noted that these symptoms got better over time.  (R.49-50). She then described three separate suicide attempts.  The first of these occurred when she stabbed herself in the stomach when she was 18; the second time she slashed her wrists; and the third time, which happened only two weeks before her hearing, involved another attempt to stab herself which was stopped by her boyfriend's intervention.  The first two of these suicide attempts resulted in hospitalizations.  (R.50-51).

Plaintiff advised that her last suicide attempt was triggered because she had been "gong through a lot lately."  She stated that a combination of her financial problems, her pain, and depression had made her suicidal.  (R.52).  She denied further suicidal

4

ideation at her hearing, but stated that she had gone to a
psychiatrist who put her on a different medication for her
depression.  She also indicated that she was seeing a therapist
with regard to her psychological problems for the first time since
her third attempt at suicide.  (R.54).  She stated that she was
taking medication to help with her depression and that it was
helping although she also noted, once again, that she did feel
tired.  She could not say whether the fatigue she feels is a side
effect of the new depression medication. (R.55).

Plaintiff testified further regarding her physical capacities
as follows: She can: walk approximately one block before needing to
sit and rest for approximately 20 minutes; lift approximately five
pounds with both hands; stand for 20-30 minutes before needing to
sit down or lay down; and sit for 45 minutes to one hour before
needing to change position.  (R.55-56).  She stated that she can
take care of her personal hygiene and cook but that she does not do
any cleaning or laundering.  (R.56-57).  With regard to social
activities, her only outlet is her weekly AA meetings which last
one hour.  (R.57).  She started seeing an old boyfriend again about
two months before her hearing.  She stated that she smoked about
one half pack of cigarettes each day but does not drink alcoholic
beverages.  (R.58).

Upon questioning by her counsel, Plaintiff stated that, while
she has been attending school five days each week, she never has

5

class for more than two and one half hours per day.  On Tuesdays and Thursdays (her long days) she has an hour between classes.  She finds school stressful because as an adult student she doesn't socialize well with her class mates.  (R.59-60).  She also stated that some days are better than others both with respect to her physical pain and her bipolar symptoms.  She experiences at least one bad day each week and misses school often (R.61).  Plaintiff has stated that she had been compliant in taking her medications prior to her third suicide attempt some six weeks before the hearing, but stated that immediately afterward her physician changed her medications.  She stated that she no longer had suicidal ideation but was still experiencing daily crying spells and plans to address those with her physician.  (R.60-62).  Plaintiff also stated that when she is experience a bad day in terms of her physical pain, she must lay down on a heating pad with a pillow between her legs.  She estimates that she missed five days of school in the previous semester because of her physical pain and bipolar symptoms.  (R.62-65).  She stated also that after one of her three hour days at school she is spent and takes a nap immediately upon arriving home.  (R.65-66).

Also testifying was Paul Anderson, a vocational expert.  Mr. Anderson stated that he had studied the record and was familiar with Plaintiff's work history.  He characterized her past work as medium exertional work.  In response to a hypothetical question

that asked him to assume an individual of Plaintiff's age, education, and work experience with the residual functional capacity for sedentary work permitting a sit/stand option, and additional limitations that Plaintiff stand no more than 30 minutes and sit for no more than 45 minutes at a time, never climb, only occasionally stoop, bend, kneel, or crouch, have no exposure to cold or dampness, have no exposure to unprotected heights or dangerous machinery, be involved only in routine, repetitive work involving one or two step procedures, and only occasionally receive direction from supervisors; Mr. Anderson stated that Plaintiff could no longer perform any of her past relevant work but that she can perform various unskilled, sedentary jobs that exist in significant numbers in the national economy.  When the hypothetical question was amended to include the limitations that Plaintiff would be unable to sit/stand or walk in any combination for eight hours at a time and would miss more than two days of work each month, Mr. Anderson responded that either of these additional limitations would render Plaintiff unemployable.

### C.   Medical Evidence

### 1.   Dr. Brinser

Dr. Earl H. Brinser, Jr., D.O., the Plaintiff's primary treating physician, has been treating Plaintiff since April of 2010.  Dr. Brinser, in consultation with Drs. Vincent Avallone, Nicholas D'Angelo, and Gregory Wickey, has diagnosed Plaintiff as

suffering from chronic low back pain, lumbar spondylosis, multi-level degenerative disc disease, status post L4-L5 decompressive laminectomy and associated myofascial pain, and biopolar disorder. (R.732-733 and 736).  Dr. Brinser has completed two separate Physical Residual Functional Capacity Questionnaires regarding Plaintiff, one dated January 10, 2012 (Doc. 29 F, R.849-53) and one dated March 13, 2013 (Doc. 50 F, R.1092-96).  On each of these forms, Dr. Brinser indicated that Plaintiff's prognosis was guarded, that she was suffering from bipolar disorder, anxiety, depression, and discogenic disease of the low back, and that she had other physical limitations more severe than those found by the ALJ in his RFC determination (R.at 17).  Significantly, Dr. Brinser also indicated on both questionnaires that the Plaintiff could be expected to miss more than four days of work each month.

   **2.   Dr. Hartman**

   Dr. Stuart Hartman also treated Plaintiff from November 15, 2010 through February 20, 2013. Dr. Hartman diagnosed Plaintiff as suffering from displacement of lumbar intervertebral discs without myelopathy and thoracic or lumbo-sacral neuritis or radiculitis, unspecified.  (Doc. 13 R, R.673-96); (Doc. 40 F, R.999-1023); and Doc. 46 F, R.1065-81).  Dr. Hartman treated Plaintiff with various pain medications including morphine sulfate tablets, Neurontin tablets, and a Duralgesic transdermal patch as well as muscle relaxants (Meloxicam).  On February 2, 1012, Dr. Hartman completed

8

a Physical Residual Functional Capacity Questionnaire with regard to Plaintiff that indicated that she had physical limitations more severe than those found by the ALJ in her RFC determination. (R.17).  Significantly, Dr. Harman also indicated that Plaintiff could be expected to miss work about four days per month.  (Doc. 31 F, R.855-58).

### 3.   Dr. Bice

On January 28, 2012, Dr. Douglas E. Bice prepared an Employee Ability Assessment Form with regard to Plaintiff for the Pennsylvania Department of Public Welfare.  Dr. Bice was not functioning at this time as a treating physician but as a consulting/examining physician.  The record indicates that Dr. Bice determined that Plaintiff was suffering from depression with anxiety and osetoarthritis.  Dr. Bice indicated that his assessment was based upon a physical examination of Plaintiff as well as a review of her critical history, medical records, and appropriate tests and diagnostic procedures.  Dr. Bice concluded that Plaintiff was permanently disabled by a "physical or mental disability which permanently precludes any gainful employment."  (Doc. 30 F., R.854).

### 4.   Dr. Dall

Dr. Ann Dall, a psychiatrist, treated Plaintiff for bipolar disorder, generalized anxiety disorder, and depression on at least nine occasions between March of 2009 and September of 2012.  (Doc.

9

43 F, R.1033-59).  Dr. Dall stated that Plaintiff expressed
suicidal ideation at sessions conducted on June 19, 2012 (R.1036)
and December 21, 2011 (R.1047).  Dr. Dall also noted on several
occasions that Plaintiff lacks medical insurance which affected her
ability to stay on her medications.  A Mental Impairment
Questionnaire completed by Dr. Dall on December 28, 2011 (Doc. 52
F) indicates that Plaintiff has "marked" functional limitations in
her activities of daily living, in maintaining social functioning,
in maintaining concentration, persistence or pace, and that
Plaintiff had experienced three episodes of decompensation of at
least two weeks duration during the preceding 12 months.  (R.1153).
These periods of decompensation stemmed, in Dr. Dall's opinion,
from a chronic organic mental or affective disorder that caused
more than a minimal limitation of Plaintiff's ability to do any
basic work activity.  Dr. Dall also indicated that Plaintiff could
be expected to miss work more than four days each month, that her
impairments could be expected to last at least 12 months, that her
impairments were consistent with the symptoms and limitations Dr.
Dall had identified, and that Plaintiff was not a malingerer. (Id).

**D.   ALJ Decision**

The ALJ determined that Plaintiff had not been under a
disability since her alleged onset date and made the following
findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements

of the Social Security Act through December 31, 2015.

2.    The claimant has not engaged in substantial gainful activity since March 4, 2011, the alleged onset date (20 CFR 404.1571 et seq, and 416.971 et seq).

3.    The claimant has the following severe impairments: lumbar scoliosis, lumbar degenerative disc disease, and bipolar disorder.  (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d) 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a and 416.967(a) except the claimant must be allowed to alternate between sitting and standing, wherein the claimant can sit for only 45 minutes at once and stand for no more than 30 minutes at once.  The claimant can only frequently balance; occasionally bend, kneel, stoop,

and crouch; and can never climb.  The claimant must avoid concentrated exposure to cold temperatures or dampness and avoid all exposure to hazards such as unprotected heights and dangerous equipment.  The claimant is further limited to the performance of simple, routine, repetitive tasks involving no more than simple 1-2 step instructions, no more than occasional interactions with the supervisors, and no independent decision making.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on June 3, 1973 and was 37 years old which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix

2).

10.   Considering the claimant's age, education, work
      experience, and residual functional capacity, there
      are jobs that exist in significant numbers in the
      national economy that the claimant can perform.  (20
      CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

## II.   Disability Determination Process.

The Commissioner is required to use a five-step analysis to
determine whether a claimant is disabled.[1]  It is necessary for the
Commissioner to ascertain: 1) whether the applicant is engaged in a
substantial activity; 2) whether the applicant is severely
impaired; 3) whether the impairment matches or is equal to the
requirements of one of the listed impairments, whereby he qualifies
for benefits without further inquiry; 4) whether the claimant can
perform his past work; 5) whether the claimant's impairment

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment which can be expected to result
in death or which has lasted or can be expected to last for a continuous period of not less that 12
months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate area
> in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R.17).

## III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third

14

Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel
> non* of substantial evidence is *not* merely a
> quantitative exercise.  A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion.  *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted).  The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely

15

deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . .

16

. the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See, e.g., Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision.

*Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV.  Discussion.

### A.  General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky*, 606 F.2d at 406.  Social Security proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim.  *Id.*  "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act."  *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974).  As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence.  *Dobrowolsky*, 606 F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed."  *Id.*

### B.   Plaintiff's Allegations of Error

Plaintiff assigns seven allegations of error: (1) the ALJ erred by finding Lawrence's fibromyalgia to be non-severe; (2) the ALJ erred in finding that Lawrence's bipolar disorder does not meet Medical Listing 12.04; (3) the ALJ failed to properly evaluate the evidence submitted by Lawrence's treating physicians; (4) the ALJ erred by failing to evaluate the opinion of Dr. Le, the consultative examiner; (5) the ALJ erred in his methodology for evaluating Plaintiff's credibility concerning the severity of her impairments; (6) the ALJ erred in relying upon the Vocational Experts testimony because his testimony may have been inconsistent with the procedures specified in SSR 00-4p; and (7) the ALJ's RFC assessment is unsupported by substantial evidence.    It is unnecessary for the Court to determine the accuracy of each of Plaintiff's arguments because one argument, that contending that the ALJ's RFC assessment is unsupported by substantial evidence, is obviously correct and dispositive.  The ALJ simply did not cite any physician's findings to support his RFC determination and, having reviewed this entire medical record of almost one thousand pages, this Court could find no medical evidence to support the ALJ's determination of the Plaintiff's RFC.  The ALJ's conclusion that the Plaintiff could perform sedentary work provided the claimant sit for no more than 45 minutes at a time and stand for no more than 30 minutes at a time is completely contradicted by the

19

findings of two treating physicians, Drs. Brinser and Hartman, and a disinterested consulting/examining physician, Dr. Bice. Similarly, the ALJ's finding that Plaintiff can perform simple, repetitive work with only occasional interaction with supervisors and no independent decision-making is inconsistent with the medical evidence provided by Plaintiff's treating psychiatrist, Dr. Dall.

Dr. Brinser stated that Plaintiff could sit and stand or walk between two and four hours in an eight-hour day and could not sit or stand for more than 30 minutes at a time. (R.850-51). Dr. Brinser also noted that Plaintiff's level of pain would interfere with Plaintiff's attention and concentration needed to perform even simple work tasks "frequently" (meaning 34-66% of an eight-hour workday in the context of the questionnaire to which Dr. Brinser responded). (R.850-51). Dr. Brinser also found Plaintiff to have postural limitations more severe than those suggested in the ALJ's hypothetical question to the vocational expert and that the Plaintiff could be expected to miss more than four days of work each month. (R.852).

Dr. Hartman stated that Plaintiff could stand for 30 minutes at a time and sit for one hour at a time, but that she could not sit, stand or walk for more than six hours in an eight hour workday. Dr. Hartman also noted that Plaintiff could be expected to miss about four days of work per month. (R.856-58).

Dr. Bice, a presumably disinterested [2] physician to whom Plaintiff was sent by the Pennsylvania Department of Public Welfare for a consultative examination did not complete a Physical Capacities Questionnaire, but did conclude that Plaintiff's condition was such that she was "permanently precluded from any gainful employment."  (R.854).

The ALJ's hypothetical question to the vocational expert asked him to assume that Plaintiff had physical capacities that no physician believed she had.  The ALJ is free to reject medical testimony where countervailing medical testimony exists, even though great weight should normally be assigned to the opinion of a treating physician.  Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000).  Here, however, the ALJ points to no medical evidence to rebut the various limitations reported by Drs. Brinser, Hartman, and Bice.[3] Beyond that, the ALJ did not consider the consistent

---

[2] The Court is concerned that the ALJ's decision includes comment that suggests the evaluations of Dr. Bice and Dr. Brinsler were to some degree animated by the "obvious desire of the provider to help the claimant's succeed in their (sic) claim for welfare benefits, thus insuring the claimant retain medical insurance and the ability to continue receiving the services provided by the evaluator." (R.21-22). The Court notes that Dr. Bice, as a one-time examining physician retained by the State, hardly had an interest in making Plaintiff's condition seem worse than it actually is. The Court also notes that the ALJ has no evidence that Dr. Brinsler, Plaintiff's treating physician was inflating her symptoms to ensure his continued compensation. The Court finds it categorically impermissible for the ALJ to impugn the credibility of these medical witnesses for the reasons stated.

[3] The ALJ relied upon a Disability Determination Explanation (Doc. 2A, R.75-91) by Mitchell Sadar, Ph.D., who the ALJ tells us is a highly qualified psychologist. (R.21). The opinion of an individual who is not a medical doctor is categorically insufficient to establish a claimant's RFC where contrary medical opinion exists. (See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986); (see also Drummond v. Commissioner of Social Security, 875 F.Supp 2d. 500, 509-10 (W.D.Pa.

opinions of Drs. Brinser, Hartman, and Dall that Plaintiff should be expected to miss four days or more of work each month and this unrefuted evidence is not reflected in the hypothetical question that formed the basis for the ALJ's RFC determination.   This is particularly significant and egregious because the vocational expert unequivocally testified that consistently missing more than two days of work each month would render the Plaintiff unemployable.   (R.71).

With respect to the ALJ's assignment of "great weight" to the opinion of the State agency psychological consultant in concluding that Plaintiff could do simple, repetitive sedentary work with the additional limitations imposed by the ALJ's hypothetical question to the vocational expert, the Court must observe that in listing the records he reviewed before formulating his Disability Determination Explanation, the consultant makes no mention of the Plaintiff's treatment history with psychiatrist Ann Dall.   The Court thus concludes that, in making his evaluation, the consultant lacked information sufficient to conclude, as he did, that Plaintiff had only insignificant mental limitations as opposed to the marked limitations indicated by treating psychiatrist Dall (Doc. 52F, R.1153).   Dr. Dall's opinion reflected an expert judgment based upon a continued observation of the patient's condition over a prolonged period of time.   This constitutes an

2012); and (Shedden v. Astrue, Civil No. 14-1274 (M.D.Pa. January 16, 2015)(Rambo, J.).

additional reason why the hypothetical question posed to the vocational expert in this case was not accurately reflective of the Plaintiff's true limitations as required by Third Circuit precedent.  Morales v. Apfel, supra at 317.  See also Zirnsak v. Commissioner of Social Security, (3d Cir. 77 F.3d 607, 614, 2014)(citing Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

## V.    Conclusion

Because of the infirmities discussed above, the Court concludes that the Commissioner's decision is unsupported by substantial evidence as required by Richardson v. Perales, supra. This case must be remanded to the Commissioner to either confer benefits because substantial evidence clearly exists to support that result, or to determine whether there exists in this record any medical evidence upon which the Social Security Administration can rely to subordinate the collective opinions of Drs. Brinser, Harman, Bice, and Dall.  An Order consistent with the foregoing determination will be filed contemporaneously herewith.

BY THE COURT

Honorable Richard P. Conaboy
United States District Court

Dated:  6 - 24 - 15

23